CASE 89—PETITION ORDINARY—FEBRUARY 23.

# Green & Barren River Nav. Co. v. Palmer.

APPEAL FROM WARREN CIRCUIT COURT

WATER-COURSES—TOLLS.—A company to which the Legislature has given the right to construct locks and dams upon a navigable stream, and to charge tolls for boats, rafts, etc., passing through 'the locks, has no right to charge tolls for rafts which do not pass through the locks. During high water, when navigation is unobstructed, such streams are free for all the purposes of navigation.

WRIGHT & McELROY FOR APPELLANT.

Appellant's charter empowers it to collect tolls from boats, barges, and rafts *whenever they start within the influence of slack-water.* There

is no exemption, except that when they do not pass through the lock they pay no lockage. (Act of March 9, 1868; 2 Revised Statutes, page 69, sections 12 and 16; Act January 1, 1852, 2 Revised Statutes, pages 73–4; Act January 6, 1860, 2 Revised Statutes, page 815; Report of Board of Internal Improvement of 1866, page 26; Act of March 15, 1876; Act of March 14, 1878.)

JOHN L. SCOTT FOR APPELLEE.

Appellee had the right to float his timber to market on the tide without the use of the locks, and he did so. As the locks rendered him no assistance, he is not chargeable with tolls.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The Green and Barren River Navigation Company brought this action against the appellee, Palmer, to recover three thousand seven hundred and eighty dollars as tolls for floating out of the Barren and Green rivers his rafts of saw logs during the high tide some years ago, these rivers being so high that the rafts passed over the locks instead of through them. These facts appearing on the face of the petition, a demurrer was sustained thereto and the petition dismissed, the plaintiff declining to plead further.

The common law right of the public to navigate such rivers can not be disputed; and in England, Chancellor Kent says the crown had no right to interfere with the channels of such streams. The use of such waters was inalienable.

The right of sovereignty has been asserted over these streams through the legislative department of the government, by which locks and dams have been constructed so as to make these rivers navigable during low water; and as an incentive for such improvements the owners, or those having the control of the locks and dams for a fixed period, have the right

to charge certain tolls for boats, rafts, etc., passing through the locks. This legislative power has been exercised as the courts must presume for the public welfare, the State holding and controlling such streams for the public good. While the right to make such improvements and to lease them has been held constitutional, it may be well argued that no such power exists in the Legislature as enables that branch of the government to make an unconditional or absolute disposition of such navigable streams as would prevent the citizen from using them for purposes of navigation, when by reason of high water all obstruction to navigation is removed, and the locks and dams for the time being rendered useless.

But no such right was intended to be conferred by the contract between the State and the appellant. It is only when the craft or other vessel passes through the locks that they have the right to impose the burden; for if otherwise, the company might be held responsible in damages for failing to provide against a rise in the stream from the heavy rains, or made answerable for injuries occurring in passing over the dams during high water. The tolls are charged by reason of the facilities afforded those who pass through the locks; but when navigation is unobstructed, these streams are free for all the purposes of navigation.

The judgment, therefore, sustaining the demurrer must be affirmed.